Arnold L. Fein, J.
Plaintiffs move for summary judgment in an action for a declaratory judgment to declare unconstitutional certain provisions of title B of chapter 30 of the Administrative Code of the City of New York and the construction and application thereof by certain city agencies.
Plaintiffs contend that sections B30-13.0 (subd. a, par. 2) and B30-16.0 (subd. a, par. 5), which, prohibit the sharing of office space by licensed master electricians, and section B30-4.0 (subd. 62), which has been construed by the Department of Water Supply, Cas and Electricity to limit the issuance of a master electrician’s license to only one member of a partnership and only one officer of a corporation, after appropriate examination and tests, violate the equal protection and due process requirements of the State and Federal 'Constitutions. Plaintiffs further argue that the restrictions imposed by sections B30-13.0 (subd. a, par. 2) and B30-16.0 (subd. a, par. 5), denying master electricians the right to share space, have no rational basis and arbitrarily interfere with the constitutional rights of persons to conduct their businesses where and as they choose.
*1051 There are no factual issues requiring a trial.
It is well established that in construing particular provisions of a statute the court must take “ into consideration the entire statute ” (People v. Dethloff, 283 N. Y. 309, 315).
1 ‘ An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascribed from the context, the nature of the subject matter treated of, and the purpose or intention of the parties who executed the contract, or of the body which enacted or framed the statute or constitution” (Cummings v. Board of Educ. of City of N. Y., 275 App. Div. 577, 586, affd. 300 N. Y. 611; Panama Refining Co. v. Ryan, 293 U. S. 388).
‘ ‘ In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered.” (People v. Ryan, 274 N. Y. 149, 152.)
The provisions here under attack must, therefore, be viewed in conjunction with its purpose and with several other pertinent provisions of the Administrative Code. Section B30-2.0, which sets forth the purpose and spells out the legislative intent underlying the electrical code provides: ‘1 Since there is danger to life and property inherent in the use of electrical energy, the electrical code is enacted to regulate the business of installing, altering or repairing wiring and appliances for electric light, heat or power in or on all real property within the building lines in the City of New York and the licensing of all persons who engage in such business.”
The provisions of this section, along with section B30-4.0 (subd. 62), have remained unchanged since their enactment in 1943. Examination of section B30-5.01, which empowers the Commissioner to make rules and regulations concerning the examination of applicants for licenses and for the issuance, suspension and revocation of licenses, and section B30-9.0 which provides for the appointment of a License Board to determine the fitness of applicants for licenses, and section B30-10.0, which sets forth the qualifications necessary for applicants, and finally section B30-12.0, which provides for examination and investigation of applicants, clearly demonstrate the concern and stringent efforts of the Legislature to safeguard the health, comfort and safety of the residents of the city. This intent is further established by the provisions that all electrical work must be done under the supervision of a licensed master electrician.
Thus, in section B30-4.0 (subd. 61) a master electrician is defined, in part, as a person or other business entity who is engaged in the electrical business who has ‘ 1 the final determination and the full responsibility for the manner in which the work *1052 is done and for the selection, supervision and control of any persons employed on the work engaged in by said person, partnership or corporation.”
It is obvious that the purpose of the code in imposing stringent qualifications and safeguards is to provide for safety and enforcement, and to insure that the ultimate responsibility for any violation of the code can be determined with ease and certainty. The entire statute must be read with this end and purpose in view. (United States v. American Trucking Assns., 310 U. S. 534, 543; Panama Refining Co. v. Ryan, 293 U. S. 388, 439.)
These necessary and proper objectives make plaintiffs’ reliance upon the equal protection clauses of both the State and Federal Constitutions untenable. Equal protection does not prevent all legislative classifications. In the exercise of its regulatory powers, the Legislature is not required to treat all persons alike. It may divide persons or things into classes, or categories, as long as such classifications are based upon a reasonable and substantial distinction which, in turn, bears a reasonable and just relationship to the purpose or subject of regulation. Where the classification has a reasonable basis, and is clearly related to the evil sought to be overcome, the classification is constitutional, if all in the class are treated in like manner. (Matter of Engelsher v. Jacobs, 5 N Y 2d 370, cert. den. 360 U. S. 902.)
The “ standards of equal protection are met if a classification, or a distinction among classes, has some reasonable basis.” (Matter of Bauch v. City of New York, 21 N Y 2d 599, 607.)
As stated in Metropolitan Cas. Ins. Co. v. Brownell (294 U. S. 580, 584): ‘ ‘ courts may not declare a legislative discrimination invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators. A statutory discrimination will not be set aside as a denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it.”
The legislation under consideration here attempts to guarantee to the public that the holder of a master electrician’s license possesses the necessary skills to perform the tasks for which he is employed and that the licensee, doing the particular job, can be easily and readily identified. Thus, section B30-13.0 requires that a licensed electrician shall prominently display a sign of specified size.
*1053 The very provisions here under attack were noted with approval in Matter of Spielvogel v. Ford (1 N Y 2d 558, 564): “ In addition, the City Council and the Department of Water Supply, Gas and Electricity has provided that any firm, partnership or corporation shall not have more than one master electrician in its employ (Administrative Code of City of New York, § B30-4.0, subd. 55; Rules & Regulations Relating to Conduct of Licensed Electricians, No. 4). 'The Administrative Code provides that a member of the partnership shall hold the master electrician’s license as a representative under the name of the partnership, and that an officer of the corporation shall have the license issued to him as the representative of the corporation. It is further provided in the rules that, if a person holding a master electrician’s license shall become employed by a firm, partnership or corporation, he must surrender his license when he becomes so employed. Therefore, the effect is that in any business entity doing electrical contracting work, there is only one master electrician, and it is upon this single individual that the full responsibility falls for all the work done by this business entity, whether it be a small firm or a gigantic corporation. In this manner the Licensing Board of the Department of Water Supply, Gas and Electricity has full and complete control of a corporation or a partnership, as well as an individual firm, regardless of its size, for since there is only one person who represents any of them as a master electrician, the taking away of that person’s license immobilizes, at least temporarily, the entire entity. The result is that there would be a natural tendency towards rigid adherence to all the rules or regulations set forth in the Administrative Code itself and those promulgated by the Department of Water Supply, Gas and Electricity. There would be very little tendency on anyone’s part to deviate in the slightest, either in an effort to save time or money, because, if such violation became known, then the firm, partnership or corporation concerned would be in the position of finding that it could no longer operate at all, since the board could revoke the master electrician license of the representative, causing all business activity on the part of the entity' concerned to come to an end. In this way the City Council has found a method of best protecting the residents from injury or damage from irresponsible electrical work by the means of forcing responsibility upon those who operate in this area of endeavor.”
The requirement that only one master electrician’s license be held by a corporation or a partnership, and that it be held by one officer or partner, as the case may be, does not deny *1054 other officers or partners from engaging in the work. Special licenses are available to them. (§ B30-13.0, subd. b, par. 2.)
As the Court of Appeals said in Spielvogel (supra, p. 567): “ The keynote of the electrical code is supervision and responsibility [emphasis is the court’s]. The supervision flows from the New York City authorities over the persons engaged in the electrical contract work, and the responsibility is the responsibility of the persons engaged in that business in observing the regulations pertaining to it [emphasis the court’s]. The lever which the city uses is the master electrician’s license, for this is the license which a firm, partnership or corporation is required to have in order to participate in that business and it is the single licensees of those business entities that the city holds responsible for all acts carried on by those businesses. It is in this manner that the City Council of the City of New York has seen fit to best protect its inhabitants from the fatal dangers which attend faulty and irresponsible electrical installations, and such cannot be said to be unreasonable.” (Emphasis ours.)
The prohibition against sharing office space by master electricians meets this standard. It is obviously designed to fix responsibility. That similar prohibitions are not made with respect to plumbers or lawyers, as argued by plaintiffs, is irrelevant, as is the fact that other means might be used, or that the court might think another method more appropriate. (Wiggins v. Town of Somers, 4 N Y 2d 215; Matter of Hotel Assn. of N. Y. City v. Weaver, 3 N Y 2d 206.) The court does not sit as a super-legislature (Day-brite Lighting v. Missouri, 342 U. S. 421; People v. Nebbia, 262 N. Y. 259).
The long history of these provisions and the practical administrative constructions put on them are entitled to great weight (Matter of Hotel Assn. of N. Y. City v. Weaver, supra; City of N. Y. v. New York City Ry. Co., 193 N. Y. 543; United States v. American Trucking Assn., 310 U. S. 534, supra; People v. Dilliard, 252 App. Div. 125, 132).
The prohibition against licensed master electricians sharing office space and the limitation which permits the issuance of only a single master electrician’s license to a partnership in the name of one partner and to a corporation in the name of one officer are reasonable and have a rational basis in the statute and regulations regarding the licensing of electricians and their interpretation. The fact that these regulations may cause plaintiffs some pecuniary hardship is not controlling.
*1055 The Administrative and Electrical Code provisions and regulations and their interpretation and application by defendants are not unconstitutional.
There are no issues for trial. On a motion for summary judgment, where it appears that a party other than the moving party is entitled to summary judgment, the court may grant such summary relief without the necessity of a cross motion (CPLB 3212, subd. [b]). Defendants are entitled to judgment.
Accordingly, plaintiffs’ motion is denied and the complaint is dismissed.